## O. G. DAWSON ET AL. V. A. A. HOLT ET AL.

1. MARITAL RIGHTS—HOMESTEAD.—Under 3d section of act of August 26, 1856, (Paschal's Dig., art. 3646,) the husband surviving, upon returning an inventory and appraisement of the community property of himself and his deceased wife, has the right to dispose of such property, and can sell and give a good title to the homestead if community property.

2. SAME.—The surviving husband can sell the homestead although there be minor children surviving and heirs of his deceased wife.

3. SAME—FRAUD.—Although such sale might be set aside for fraud, yet to do so, the fraud must be satisfactorily proven and knowledge of it brought home to the purchaser. Mere bad conduct, however notorious, on the part of the surviving husband, would not affect his power to sell the community property.

APPEAL from Smith. Tried below before the Hon. M. H. Bonner.

This was a suit brought by the heirs of a deceased wife against the purchasers of the homestead sold them by the surviving husband on the day after he had filed an inventory and appraisment of the community property, under the act supplementary to the act better defining marital rights. (Paschal's Dig., art. 4648.) The facts are set out in the opinion, except that the bad conduct of the husband alluded to was his immorality, living in notorious adultery with a negro woman, neglect of his children, failure to support or educate them, &c.

The affidavit of Green, relied on for new trial, was to the effect that he had heard the husband the day before the sale say that "some of the heirs opposed him and Mary Jane, (a freed woman of color with whom he had been living in adultery for some time,) and that he had determined to dispose of the place from under them, and that they might shift for themselves or go to hell; that he knew he could get them out, and he intended to do it;" that Smith's conduct with the negro woman was notorious.

Verdict and judgment for the defendants, and the plaintiffs appealed.

*Robertson & Herndon,* for appellants, insisted—

I. The power given the survivor to dispose of community property is not given by the statute until after the inventory and appraisement has been acted on and approved by the Probate Court. (Paschal's Dig., arts. 1299, 1300, 4648.)

II. Upon the death of the wife, descent was cast *eo instanti* upon her heirs. The husband surviving could not dispose of the interest of the heirs, except for the payment of debts. (Jones *v.* Jones, 15 Tex., 145; Cooper *v.* Singleton, 19 Tex., 267; Prior *v.* Stone, 19 Tex., 372; Wall *v.* Clark, 19 Tex., 321; Tadlock *v.* Eccles, 20 Tex., 782; Sossaman *v.* Powell, 21 Tex., 666; Brewer *v.* Wall, 23 Tex., 585; Goode *v.* Combs, 28 Tex., 50; Burleson *v.* Burleson, 28 Tex., 418; Thompson *v.* Cragg, 24 Tex., 599; Canon *v.* Murphy, 31 Tex., 405; Barrett *v.* Barrett, 31 Tex., 344; Walker *v.* Howard, 34 Tex., 478; Morrell *v.* Hopkins, 36 Tex., 686, Walker *v.* Young, 37 Tex., 519; Hartman *v.* Thomas, 37 Tex., 90; Magee *v.* Rice, 37 Tex., 498; McAlister *v.* Farley, 39 Tex., 558; Collins *v.* Box, 40 Tex., 190.)

III. The survivor, when properly qualified under the act of August 26, 1856, holds the same relation to the community property, the heirs and creditors, in all respects, as an

administrator does to an estate under the general probate laws.  Upon payment of the debts of the community his trust ceases, and he becomes tenant in common with the heirs in the remainder of the estate.  (Brackett *v.* Devine, 25 Tex. Supp., 194; Tucker *v.* Brackett, 28 Tex., 336; Wheeler *v.* Selvidge, 30 Tex., 407.)

IV.  Can the surviving husband, under this act, do more than he had power to do in the marital partnership which under the law he is administering?  It seems that his power to sell ought not to be increased.  The law does not supply the consent of the wife to the disposal of the homestead.  It is no part of the estate subject to administration—his power to administer should not attach to it.  (Sossaman *v.* Powell, 21 Tex., 666; Burns *v.* Jones. 37 Tex., 52; 18 Cal. Rep., 73; 12 Cal. Rep., 214–216; 8 Cal. Rep., 72, 509; 5 Cal. Rep., 252; Brentam *v.* Storey, 39 Cal. Rep., 183.)

V.  The rights of the children are not superior to that of the parent, but are to that of all others.  Upon its abandonment or sale by the parent they, not having been furnished any other, can assert their rights in the homestead as tenants in common with his vendees, as in this case.  (See authorities above.)

VI.  The heirs of Mrs. Smith took their interest in her estate August 31, 1864, and held it until November 16, 1866, (date of sale,) subject only to the contingency of the homestead privilege, which was then abandoned, when their inheritance became a vested right, protected under the Constitution.  (Brentam *v.* Storey, 39 Cal. Rep., 183.)

*Stephen Reaves,* for appellees.

IRELAND, ASSOCIATE JUSTICE.—In 1864 J. P. Smith and Margaret Smith, husband and wife, were the owners of certain property situated in the town of Tyler, which was community property.  In that year the wife died, leaving plaintiffs, her children  and heirs surviving.

The property was occupied by Smith and wife as a homestead at the date of Mrs. Smith's death, and continued to be so occupied by Smith and children, plaintiffs, after the death of the wife and up to the sale by Smith.

There was no regular administration on the wife's estate, and no debts are shown to have existed against the community. On the 15th day of November, 1866, J. P. Smith, the surviving husband, filed in the probate court of Smith county an inventory and appraisement of the community estate of himself and deceased wife, and on the 16th day of November, 1866, he sold and conveyed the property in controversy to defendants for the sum of about $1,700, gold.

The entire property of the estate, as shown by the inventory, amounted to $2,307. At the date of the sale by Smith some of the children were adults and some minors.

It is alleged in the pleadings and contended for by plaintiffs, 1st, that there is no authority in a survivor under the law to sell the community estate until the inventory and appraisement has been filed and approved or acted on by the probate court; 2d, that supposing the law to have been complied with in this respect, Smith's object in making the sale was to defraud his children, and that defendants knew this fact; and 3d, that there is no power in the surviving husband to sell the homestead so long as there are minor children residing with him on said homestead.

The first of these propositions involves the construction of the 3d section of the act of 1856 amendatory of the marital rights act of 1848. (Paschal's Dig., art. 4648.)

So much of that section as is important to notice reads thus:

"It shall be the duty of the surviving husband, at the death of his wife, if she have a surviving child or children, to file in the county court a full, fair, and complete inventory and appraisement of all the community property of himself and his deceased wife, to be taken and recorded as in cases of administration, and to have the same force and

12

effect in all suits between parties claiming under it." "After which, without any administration or further action whatever in the probate court, he shall have the right to manage, control, and dispose of said community property, both real and personal, in such manner as to him may seem best for the interest of said estate, and of suing and being sued with regard to the same in the same manner as during the life of the wife."

It is contended that the latter clause of the law as quoted is to be construed literally and strictly, and that the authority of the husband to sell did not attach until after the probate court had "recorded" the inventory and appraisement.

It must be borne in mind that the surviving husband had the right to sell the community property to pay debts against the community, after the death of the wife, without the aid of this statute. (Jones *v*. Jones, 15 Tex., 147.)

It was clearly not the intention of the Legislature to throw restrictions around the survivor in such cases, but to enlarge their powers.

There is no express approval of the inventory required by the court. It must be "recorded," and no valid reason is perceived why the "recording" could not have been done as well when it was filed by the clerk as to have waited for the meeting of the probate court. If it was not correct no one was bound by it, and an additional one could have been required at any time thereafter. It is believed that the view contended for is too restricted, and that the statute in question should receive a more liberal construction.

The third point contended for is not tenable. It is not now regarded as an open question. We are asked by counsel to treat it as an open question, and to review the former rulings of this court; but as we are of opinion that this would not lead to any beneficial or different results we decline to do so. (Johnson *v*. Taylor, 43 Tex., 121; Brewer

*v.* Wall, 23 Tex., 585; Allison *v.* Shilling, 27 Tex., 450.)

We are aware that this view of the law places the destinies and fortunes of the offspring in the power of the father, but in forming general laws and rules it is questionable whether any safer or more disinterested custodian of the rights and welfare of the child has ever been devised than that of the father. That this rule is liable to abuse is not a sound argument against it.

The second point, viewing them in inverse order, is that the sale was made to defraud plaintiffs, and that defendants knew this fact. This is not borne out by the facts. The proof offered to sustain this allegation is too weak and remote to even go to the jury, without an offer to bring it home to defendants in a more direct way.

This view of the facts will also dispose of the motion for a new trial. The affidavit of Greer, if it had been before the court, could not have changed the result.

The statement that Smith's conduct was generally known in the community is too general.

His conduct, indeed, seems to have been far from exemplary, but unless the fact alleged, that he was trying to defraud his children, was brought home to the purchasers before they bought, his general conduct could not affect the sale. We see no error in the case for which the judgment should be reversed. This is the judgment of a majority of the court; the writer, however, regrets to find himself constrained to differ with his brothers in this case.

My views are, without argument—

1. That this act of 1856 did not change the law of descents, and that at the date of the sale by Smith the adult heirs were entitled to their share of the mother's estate as it then existed, and that there was no power in the father to change, sell, or in any manner dispose of it, except to pay debts against the community.

2. That the law means what it says, "after which," that

is, after the inventory had been recorded, as in other cases, the survivor might sell and not before. The judgment is affirmed.

AFFIRMED.

Chief Justice ROBERTS did not sit in this case.