S. S. ASHE V. HENRIETTA YUNGST ET AL.

(Case No. 2219)

1. HOMESTEAD—COMMUNITY—SURVIVOR MAY SELL COMMUNITY HOMESTEAD TO PAY COMMUNITY DEBTS—Where debts exist against the community estate, the survivor may sell the community homestead for the purpose of paying them, without having qualified under the statute, as such survivor.

2. SAME—SURVIVING PARENT—CHILDREN—SECTION 52, ARTICLE 16, CONSTITUTION, 1876, CONSTRUED—Children have no interest in the homestead, as such, as against the surviving parent, by virtue of the homestead rights of their deceased parent, but they take title to such property just as they would to other real property; and there is no distinction in this respect between adult and minor heirs, except that the latter may indirectly receive a benefit through the possessory right given the surviving parent or their guardian, on account of the family of which they may be constituents.

3. CASE DISTINGUISHED—The case of Kirkland *v.* Little, 41 Tex. 456, distinguished.

APPEAL from Harris. Tried below before the Hon. James Masterson.

This was a suit by appellant, S. S. Ashe, against appellees, Henrietta Yungst and Alice Yungst, to remove cloud from his title to a lot of ground, and the improvements thereon, situated in the city of Houston, Texas. He alleged that he was in possession of the lot, and that the appellees were asserting a right and title to the premises, or a part thereof.

Defendants, by their guardian *ad litem*, pleaded general denial, and alleged that the property was the homestead of their parents, and

that neither they nor their father had any other home; that, at the time of the making of the deed to the Settegasts, their mother was of unsound mind; and, that, in October, 1883, the Settegasts reconveyed the property to their father; that the transactions were not *bona fide* but pretended sales, made to secure a debt from their father to the Settegasts. No notice of the mortgage, or of the nature of the transaction, was charged to plaintiff. They prayed for judgment restoring to them possession of the property, or to each an undivided fourth of the property, and for partition,

Plaintiff responded, denying generally and specifically the allegations of the answer, and alleging that, at the time of the purchase, he was the owner and holder of the notes of Yungst to the Settegasts for the purchase money of the lot; that the community estate of Herman and Harriet Yungst was largely indebted, and, among other debts, owed a large amount of taxes on the lot to the state and county, and to the city of Houston, and that, to satisfy and pay off the indebtedness aforesaid, Yungst had sold the property to him in good faith, and put him in possession thereof.

The common source of title was admitted to be H. G. Pannell. Plaintiff put in evidence the following deeds, etc., to the lot in controversy :

1. Pannell to Herman Yungst, dated January 17, 1872.

2. General warranty deed from Herman and Harriet A. Yungst to W. J. Settegast and brother, duly acknowledged, dated March 15, 1882, and recorded same day—consideration, $100 cash, and note for $300. due at eighteen months, with interest from date at ten per cent., and lien on lot retained in deed to secure the note.

3. The purchase money note of the Settegasts, indorsed in blank by Herman and Harriet A. Yungst.

4. Release to Settegast and brother of the note and lien, dated January 18, 1884, and recorded January 23, 1884, made by Geo. H. Herman, the then owner of the note.

5. Deed of special warranty from W. J. Settegast and brother to Herman Yungst, dated and recorded October 3, 1883—consideration, $45.00, and fifteen notes, of even date, for balance of purchase money, amounting in all to $310, with interest from date at ten per cent., and lien on lot retained in deed to secure the notes.

6. Assignment of these notes of Herman Yungst and lien for purchase money under the last mentioned deed, made by the Settegasts to appellant Ashe, dated September 12, 1884, and recorded March 11, 1885.

7. Fourteen notes (one having been paid by Yungst to the Sette-

gasts) given by Yungst to the Settegasts under the repurchase, each dated October 3, 1883, bearing interest from date at ten per cent. per annum, amounting together, exclusive of interest, to $290, and reciting that they were given for purchase money of the lot, and were secured by vendor's lien thereon; which notes had been transferred by Settegast and brother, without recourse, and were marked paid in full, September 14, 1884, by S. S. Ashe.

8. Deed of general warranty from Herman Yungst to S. S. Ashe, (appellant), dated September 17, 1884, recorded March 11, 1885, the consideration recited being $682 in cash, and the payment, cancellation and discharge of the fourteen notes of Yungst to Settegast and brother, for purchase money of the lot, amounting to $318.

Mrs. Yungst died, December 2, 1882, an inmate of the lunatic asylum. The property in controversy was community property, was the homestead of Herman Yungst and wife, and was all the property they owned. Appellees were their children, the eldest, at the time of Mrs. Yungst's death, being about thirteen years old.

Yungst, the surviving husband, testified: At the time of my wife's death I was largely indebted for her care, and taxes were then due on the property. I guess I owed about $800 or $900 for debts contracted during the time my wife was ill. It was for her sickness, and for living expenses, and for medicine, and for other things."

Ashe testified that there were state, county and city taxes due on the property, amounting to $250. Ashe bought from the surviving husband, Herman Yungst. The property was valued at from $500 to $1,000 at the time of the purchase by Ashe. He paid $682 cash, and $318 in notes, for the property.

The cause was tried before a jury, and the plaintiff asked the court to give the following charge:

"It is admitted that the lot in question was the community property of Herman Yungst and Harriet, his wife, the father and mother of defendants in this suit. If the proof shows you that the community estate of Herman and Harriet Yungst was indebted for state, county and city taxes on the lot, or otherwise, or in both ways, then the survivor, Herman Yungst, had the right to sell the same to satisfy said taxes or other debts, if any, and his conveyance of the same would convey to the purchaser both his own half interest therein and the interest of his deceased wife and her heirs. If you so find, and that Herman Yungst, the surviving husband, sold the same in good faith for the purposes above stated, then you will find for the plaintiff Ashe, even though you should find that Mrs. Yungst was not competent to make the deed to the Settegasts, of date March 15,

1882, and even though you should find that the deed was only a pretended sale, or that it was intended as a mortgage. But, if you find that the deed of March 15, 1882, was, as on its face it purports to be, a sale of the property by Yungst and wife to the Settegasts, and that Mrs. Yungst was competent to execute the same, that is, that she comprehended the nature of the transaction at the time of the acknowledgment to the notary, then the title passed by the same from Mrs. Yungst and her husband to the Settegasts ; and if you so find, find for the plaintiff, without going into the inquiry as to whether there was community indebtedness or not.''

The court refused to give this charge, and failed to give any equivalent.

The jury found : 1. That the deed from Yungst and wife to Settegast was intended as security for the money paid by Settegast to Yungst. 2. That Mrs. Yungst was of unsound mind at the time of signing the paper. 3. That the consideration paid by Ashe to Yungst was $682 cash, and the payment of fourteen promissory notes of Yungst to Settegast, amounting to $318.

The court rendered judgment in favor of the plaintiff for one-half, and in favor of each of the defendants for one-fourth of the property, and partition was ordered in accordance therewith. Plaintiff appealed.

C. Anson Jones, for appellant, that the surviving husband may sell community homestead, when necessary to pay community debts, without qualifying under the statute, as such survivor, cited : Watkins v. Hall, 57 Tex. 2; Shannon v. Gray, 59 Tex. 252; Johnson v. Harrison, 48 Tex. 257; Wright v. Doherty, 50 Tex. 34; Wilson v. Helms, 59 Tex. 682, 683.

That children take no other estate in homestead than that given by the laws of descent and distribution, he cited: Constitution, art. 16, sec. 52; Shannon v. Gray, 59 Tex. 252; Grothaus v. DeLopez, 57 Tex. 672; Johnson v. Taylor, 43 Tex. 122.

That the homestead right does not survive to children, he cited: Shannon v. Gray, 59 Tex. 252; Tadlock v. Eccles, 20 Tex. 792; Brewer v. Wall, 23 Tex. 589.

That the survivor can sell the homestead, he cited : Johnson v. Taylor, 43 Tex. 121; Dawson v. Holt, 44 Tex. 178; Cordier v. Cage, 44 Tex. 535; Watkins v. Hall, 57 Tex. 2.

The survivor had power to sell to pay community debts before passage of the act of 1856, he cited : Jones v. Jones, 15 Tex. 143; Dawson v. Holt, 44 Tex. 178.

That the act of 1856 does not restrict this power, he cited : Sanger
v. Moody, 60 Tex. 96; Dawson v. Holt, 44 Tex, 178; Lumpkin v.
Murrell, 46 Tex. 59.

E. P. Hamblen, for appellees, on the questions discussed in the
opinion, cited : Constitution, art. 16, sec. 52; R. S., arts. 2002, 2005,
2164; Davis v. McCartney, Texas Law Rev., December 1, 1885;
Scott v. Cunningham, 60 Tex. 566; Reeves v. Petty, 44 Tex. 254;
Putnam v. Young, 57 Tex. 464; Sossaman v. Powell, 21 Tex. 664;
Cage v. Mefford, Tyler term, 1885.

STAYTON, ASSOCIATE JUSTICE.—The lot in controversy was com-
munity property, owned by Herman Yungst and his wife, and it was
their homestead. Under the findings of the jury, for the present
consideration of this case, it must be held that the conveyance from
Yungst and wife, of date March 15, 1882, was intended simply as a
mortgage to secure the payment of a sum of money then borrowed
by Yungst from W. J. and J. J. Settegast.

So considered, that conveyance was inoperative without reference
to whether Mrs. Yungst was sane at the time the deed of that date
was executed. The reconveyance by W. J. and J. J. Settegast to Her-
·man Yungst, of date October 3, 1883, could have no effect upon the
title, and most likely was intended to give to the Settegasts a secu-
rity for the money originally loaned by them in the form of purchase
money notes, and thereby to cover up, so far as 'could be done, the
real transaction between the parties.

Mrs. Yungst died on December 2, 1882, leaving minor children,
who are the appellees, and the property in controversy continued to
be the homestead of Yungst and his family until after the death of
his wife. Yungst seems to have been indebted, at the time of the
death of his wife, in a sum equal to the value of the property. A
part of this indebtedness doubtless consisted in the debt to the Sette-
gasts, contracted March 15, 1882, which, notwithstanding the changes
in the form of the instruments which evidenced it, still existed ; a
part consisted in taxes due on the property for many years, and the
residue in debts contracted to different persons. From the testimony
of Herman Yungst, it is reasonable to infer that the greater part of
the indebtedness existing at the death of his wife, had its origin in
expenses incurred in her behalf, during the affliction that continued
until the time of her death. The title of the appellant must depend
upon the power of Herman Yungst to convey the property to him
by the deed of date September 17, 1884.

For the purpose of passing on this question it will be assumed that the community estate of Herman Yungst and wife was insolvent at the time of her death; that it was indebted in a sum equal to the value of the property in controversy; that the property was their homestead, and that the appellees were their minor children. It has been held in many cases that the survivor of the community has power to sell community property to pay debts or to reimburse for sums paid on such debts out of his or her separate estate. Jones v. Jones, 15 Tex. 143; Primm v. Barton, 18 Tex. 222; Good v. Coombs, 28 Tex. 51; Dawson v. Holt, 44, Tex. 174; Wenar v. Stenzel, 48 Tex. 488; Johnson v. Harrison, 48 Tex. 257; Uramendi v. Hutchins, 48 Tex. 531; Sanger Bros. v. Heirs of Moody, 60 Tex. 97; Wilson v. Helms, 59 Tex. 680.

This power results from the nature of the community estate, and, as has been often held, was not withdrawn by the act of 1856, which, when the survivor qualified under it, gave other and more enlarged powers. Dawson v. Holt, 44 Tex. 178; Lumpkin v. Murrell, 46 Tex. 52; Sanger v. Moody, 60 Tex. 98.

It has been held in several cases that the survivor, whether husband or wife, who qualified under the act of August 26, 1856, has the power to sell a community homestead, and that such right is not affected by the fact that the estate is insolvent. Johnson v. Taylor, 43 Tex. 122; Dawson v. Holt, 44 Tex. 174; Cordier v. Cage, 44 Tex. 535; Watkins v. Hall, 57 Tex. 2; Shannon v. Gray, 59 Tex. 252.

"The children have no interest in the homestead, as such, as against the surviving parent, by virtue of the homestead rights of the deceased parent. If it was the community property of their parents, they inherit the share of the deceased parent, just as they inherit other community property." Johnson v. Taylor, 43 Tex. 122; Tadlock v. Eccles, 20 Tex. 782; Brewer v. Wall, 23 Tex. 586; Grothaus v. DeLopez, 53 Tex. 670; Shannon v. Gray, 59 Tex. 252.

This being true, if debts exist, we do not see any reason why the power of a survivor to sell community homestead for the purpose of paying them shall not exist as fully, by reason of the facts of the survivorship and debts, as by reason of a qualification under the statute. The first gives a power more restricted than does the latter, but either gives the general power to sell community property if debts exist.

The case of Johnson v. Harrison seems to have been brought by children to recover a community homestead sold by the survivor without qualification under the statute, and the rights of the purchaser was made to depend upon the existence or non-existence of community debts at the time of the sale, and there is nothing in the

entire opinion which questions the power of the survivor to sell even a homestead, if debts exist. We, however, find no direct adjudication of the exact question which arises in the case before us, though cases have arisen in which the question was involved.

The principles announced in the cases we have cited seem to us to lead inevitably to the conclusion that Herman Yungst had power to convey to the appellant, on September 17, 1884. It is claimed, however, that if this would have been true under the laws existing prior to the adoption of the present constitution, that, it is not so under the provisions of that instrument.

The Constitution provides that : "On the death of the husband or wife, or both, the homestead shall descend and vest in like manner as other real property of the deceased, and shall be governed by the same laws of descent and distribution, but it shall not be partitioned among the heirs of the deceased during the lifetime of the surviving husband or wife, or so long as the survivor may elect to use or occupy the same as a homestead, or so long as the guardian of the minor children of the deceased may be permitted, under the order of the proper court having the jurisdiction, to use and occupy the same." Constitution, art. 16, sec. 52.

This provision of the Constitution applies to all homesteads, whether the estates to which they belong be solvent or insolvent. It makes no distinction, and the courts have no power to make any. It regulates the vestiture of title, and descent and distribution, in that it subjects it to the same rules which the legislature may provide for any other real property ; but it gives, under certain conditions, possessory rights, which may exist without any right whatever by inheritance under the general laws of descent.

It does not confer on minor children any right in reference to the homestead which did not before exist, but may, in cases of insolvent estates, operate a denial to them of some rights which the former law gave them.

If the homestead be the separate property of the surviving parent, he or she may certainly sell it, as under the former law. If it be the separate property of the deceased parent, it secures to the survivor the use of the property so long as he or she elects to occupy it, even against children who hold the legal title.

If it be community property, it secures to the survivor the same right as against children who inherit one-half of it from the deceased parent.

If both parents die, the right of minor children, through a guardian, to occupy the homestead, is not an absolute right, as is that

of a survivor, for its exercise is made to depend on the judgment of the proper court as to whether such occupation is necessary or proper.

It may be denied, and partition with adult heirs directed, if to the court it seems advisable. All these matters but tend to show that minors take title to homestead property, just as they take title to other real property, except, as in the terms of the constitution, they may have a possessory right which adult heirs do not have. The constitution declares under what circumstances this right shall exist, and excludes the idea that any such right exists if a parent be alive, unless, possibly, in a case in which, notwithstanding the existence of a parent, facts exist which make guardianship of minor children necessary.

It seems to us that the present constitution, instead of giving to minor children an interest in homestead property other or greater that they had under the former laws, in some respects may restrict their rights, and, that duly considered, it emphasizes the rulings under former laws, that no homestead rights descend to them, except as and to the extent this may be given by the express terms of the constitution.

Since the act of January 9, 1843, laws have been in force in this state protecting the widow and minor children of a deceased person in the enjoyment of property exempted to families from forced sale, and through them minors have been protected as against creditors, when both parents were dead. If a mother survived, the rule has been to place the homestead in her possession and under her control, the law presuming that this gave all necessary protection to minor children.

It was never deemed necessary, on the death of a wife, to set apart to the surviving husband and children the community or other homestead; and this is so, for the simple reason that it was supposed the father was able and willing to provide for his minor children, and his sense of duty to them such as to induce him to continue to occupy it and thus protect it from forced sale, as the home of the family, if, in his judgment, it was to the interest of the family that he should do so.

The present constitution gives to the father or mother, surviving, the right to occupy the homestead without reference to the ownership of the fee, and this right either of them may decline to exercise, in which event, the property, under the terms of the constitution, would become subject to partition, if children of the deceased parent take any part of it by inheritance. Adult, as well as minor heirs, would partake in such partition, on equal terms, unless the plain language

of the constitution, which declares that "the homestead shall descend and vest in like manner as other real property of the deceased, and shall be governed by the same laws of descent and distribution," is to be disregarded.

The statutes regulating the descent and distribution of real property, other than homestead, make no distinction between adult and minor heirs. On partition would the homestead go to the adult heirs, exempted as was it to the deceased parents? This court held not, in Givens *v.* Hudson, 64 Tex. 471, and we do not see that minor children, under the constitution, can have any right, whatever, in homestead property, other than have their adult brothers and sisters, except as they may indirectly receive benefit through the possessory right given to the surviving parent or guardian, on account of the family of which they may be constituents.

The declaration of the constitution that the homestead "shall not be partitioned * * so long as the survivor may elect to use or occupy the same as a homestead," is but the equivalent of a declaration that when the survivor does not elect longer so to use it, it may be partitioned. The right to partition a homestead, most frequently a single piece of property that may have to be sold for partition amongst heirs, whether minor or adults, or of both, is utterly at war with the continued existence of the homestead, the very necessity for which is founded on the theory of protection to a unity, known as the family, to whose common, undivided use and shelter it is applied.

When the right to partition accrues, whatever homestead right formerly existed must be held to have ceased, as between the co-owners ; and if it be community property we see no reason to doubt that the survivor may sell it to pay community debts, just as he might any other community property

It is unnecessary to consider how far the rules laid down in reference to the homestead set apart to a widow and minor children under former laws, or vesting in them under act of August 15, 1870, can be applied, under the present constitution, where an estate is insolvent; for the facts of this case do not bring it within these rules. The case of Kirkland *v.* Little, 41 Tex. 456, has no application to this case. It simply holds, that to give the survivor the general power to sell the interest of a deceased wife in community property, it is necessary that he qualify under the statute; but it does not deny the general and long established rule, that, for the purpose of paying debts, the survivor may sell, without such qualification.

The charge asked by the appellant, and referred to in the second

assignment of error, should have been given, and the refusal to give it was such error as requires the reversal of the judgment. Reversed and remanded.

REVERSED AND REMANDED.

[Opinion delivered March 9, 1886.]