MORSE et al. v. NIBBS.

(Court of Civil Appeals of Texas. Galveston. Oct. 22, 1912. Rehearing Denied Nov. 14, 1912.)

1. HUSBAND AND WIFE (§ 273*)—COMMUNITY PROPERTY—SALE BY SURVIVING SPOUSE TO PAY COMMUNITY DEBTS.

The surviving spouse may without administration on the estate of the deceased spouse sell community property to pay community debts, and the purchaser is not bound to see that the purchase money is applied to the payment of such debts, but it is essential to his protection that the consideration paid is not grossly inadequate, that there is no collusion or fraud to which he is a party, and that he has no knowledge of any intention of the survivor to misapply the proceeds.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1008–1024; Dec. Dig. § 273.*]

2. HUSBAND AND WIFE (§ 273*)—COMMUNITY PROPERTY—SALE BY SURVIVING SPOUSE.

The surviving spouse may sell the community homestead to pay community debts, though the estate is insolvent.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1008–1024; Dec. Dig. § 273.*]

3. HUSBAND AND WIFE (§ 274*)—COMMUNITY PROPERTY — RIGHTS OF CHILDREN AS AGAINST SURVIVING PARENT.

Children have no interest in the community homestead as such as against the surviving parent.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1026–1031; Dec. Dig. § 274.*]

4. HUSBAND AND WIFE (§ 273*)—COMMUNITY PROPERTY — SALE BY SURVIVING SPOUSE — STATUTORY AUTHORITY.

A surviving spouse who complies with Sayles' Ann. Civ. St. 1897, arts. 2226, 2227, providing for an order authorizing the survivor to control, manage, and dispose of community property, and declaring that, when the order has been entered, the survivor without any further action shall have the right to control, manage, and dispose of community property as may seem best for the interest of the estate, has the right to sell the community property, though it is community homestead, independently of the existence of community debts, provided such a course seems for the best interest of the estate.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1008–1024; Dec. Dig. § 273.*]

Error from District Court, Harris County; W. P. Hamblen, Judge.

Action by W. C. Morse and others against A. B. Nibbs. There was a judgment for defendant, and plaintiffs bring error. Affirmed.

Anselm H. Jayne and Dan H. Triplett, both of Houston, for plaintiffs in error. Wilson & Dabney, of Houston, for defendant in error.

McMEANS, J. This is a suit brought by the plaintiffs in error to recover from the defendant in error a one-fourth undivided interest in 200 acres of land, parts of the John D. Taylor league and the E. P. Whitehead survey, in Harris county. The defendant in error answered by a plea of not guilty. The case was tried by the court without a jury and resulted in a judgment for defendant in error, from which the plaintiffs in error have prosecuted this appeal.

The facts, in so far as they are material to a proper disposition of this appeal, are substantially as follows:

Mrs. Harriet George was the owner of several tracts of land, including the 200 acres in question. She died leaving a will in which she devised to her four grandchildren, C. C. Morse and Ella Morse, his sister, and Myra C. Smalley, who afterwards married Spencer, and her brother, Ennis Smalley, all her property, including the 200 acres, to be shared by them equally. Ella Morse afterwards died without issue and her fourth of the property passed by the laws of descent and distribution to her brother, C. C. Morse. On April 20, 1881, C. C. Morse married Ivie Beeler, and the plaintiffs in error are the issue of that marriage. August 1, 1893, by deed of said date, C. C. Morse purchased from Myra E. Spencer, formerly Smalley, her entire interest in all the lands devised to her by the will of Mrs. George, the consideration being $1,400, of which $500 was paid in cash and two promissory notes of even date with the deed, one for $400 and the other for $500, both bearing interest at the rate of 8 per cent. per annum from date. On May 1, 1894, C. C. Morse acquired by purchase all the land devised to Ennis Smalley by the will of Mrs. George, the consideration being $1,500, of which $400 was in cash and two promissory notes of said Morse, each for $550, bearing 8 per cent. per annum interest from date. The lands acquired by these purchases were the community property of C. C. Morse and Ivie Beeler Morse. Ivie Beeler Morse died intestate July 12, 1895. At the time of her death, the 200 acres was the homestead of herself and C. C. Morse. On June 6, 1896, C. C. Morse duly qualified as survivor of the community estate of himself and his deceased wife, Ivie Beeler Morse, and the list of claims filed at the time of the return of the inventory and appraisement showed that the community was indebted in the sum of $2,804.28, among the items of indebtedness being $900 principal and $163.40 interest, balance of purchase money due Myra E. Spencer, and $1,280 balance of the purchase money due Ennis Smalley for their interest in the land.

By deed dated July 11, 1896, but which it appears was not delivered until December 31, 1896, C. C. Morse conveyed the 200 acres, one-fourth of which is in controversy, to Sam Bongio for the recited consideration of $2,500, cash, and by deeds of same date, which were not delivered until December 31, 1896, said Morse conveyed other lands of the community to Paul Vunuto, Bongio's father-in-law. At the time of these transactions Bongio deeded to said Morse a place in

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

the Fifth ward of the city of Houston for the recited consideration of $2,500.

It was shown by the testimony of the witness J. S. Feagan, an attorney at law, in substance, that he wrote all the deeds in the purchase of the property by Bongio from Morse and represented Bongio in the transactions; that Bongio would not buy until the vendor's notes held by Ennis Smalley and Mrs. Spencer had been paid in full; that the witness took the money that Bongio was to pay for the land and paid to Mrs. Spencer the amount of her notes, and a part of that which was due Ennis Smalley on his, and obtained from both releases of their respective vendor's liens; that Bongio paid all the purchase money for the lands, but directed that the deed to all of it should be made in the name of Vunuto, except to the 200 acres which was made to him; that Vunuto then gave to Ennis Smalley a deed of trust on the land placed in his name to secure the balance of the purchase money due Smalley, and that both Smalley and Mrs. Spencer released their vendor's liens on the 200 acres. His testimony further shows that for the land deeded to Bongio and Vunuto Morse, in addition to the money and notes paid him, received from Bongio a deed to the Fifth ward property, which recited a cash consideration of $2,500 paid. Afterwards Sam Bongio, joined by his wife, Josephine, and Frank Bongio, conveyed the 200 acres to defendant in error Nibbs.

By their first assignment of error and the second proposition thereunder plaintiffs in error contend in effect, that the court erred in not rendering judgment for them, because the evidence shows that the community debt due for the purchase money of the 200-acre homestead tract had been paid out of the proceeds of sales of other lands owned by the community, and that all community debts had been paid before the sale of the 200 acres or before its exchange with Bongio for the Fifth ward property in the city of Houston. The testimony of the witness J. S. Feagan refutes this contention. It was established by his uncontradicted testimony that at the time of the delivery to Bongio of the deed conveying the 200 acres the notes given by Morse to Ennis Smalley and Mrs. Spencer, which were unquestionably community debts, were outstanding and unpaid, and that Bongio refused to buy until these notes had been paid and the vendor's liens on the land, by which they were secured, had been released; that the witness carried the purchase money of the land with him to Houston with which the note of Mrs. Spencer was paid, and that of Smalley partly paid, and both liens discharged, and the releases executed, after which the deeds were delivered.

[1] By their first proposition under this assignment plaintiffs in error contend, in effect, that upon the death of Mrs. Ivie Beeler Morse her interest in the community homestead descended to her children, the plaintiffs in error, and was not subject to a sale by the survivor to pay any debts owing by the community other than for the purchase money, taxes, or the liens of mechanics, artisans, and materialmen for improvements made thereon in the manner provided by the Constitution of Texas, and that their interest in the homestead could not be lawfully sold by the surviving parent except for such debts, whether he had qualified as survivor under the statute or not. It being true that a community indebtedness for the purchase money of a part of the 200 acres in question existed, Morse, even under the contention of plaintiffs in error, had a right to sell it, and his deed conveyed as against them a valid title. But we cannot assent to the proposition that the survivor has no right to sell the community homestead, except for the payment of the purchase money thereof, taxes due thereon, or for improvements made thereon in accordance with a contract made in the manner prescribed by the Constitution. It is now well settled in this state that the survivor of a marital relation has authority, without administration on the estate of the deceased spouse in any of the statutory modes, to sell community property to pay community debts. The purchaser of community property under such circumstances is not bound to see that the purchase money is applied to the payment of the community debts. It is essential, however, to the protection of the purchaser that the consideration paid be not grossly inadequate, that there be no collusion or fraud to which he is a party, and that he have no knowledge of any intention of the survivor to misapply the proceeds. Sanger v. Heirs of Moody, 60 Tex. 96; Walker v. Abercrombie, 61 Tex. 69; Moody v. Butler, 63 Tex. 210; Ashe v. Yungst, 65 Tex. 631.

It is not contended in this case that the consideration paid by Bongio was inadequate or that he was a party to any fraud or collusion with reference to the sale; and it was proven beyond controversy that there was no misapplication of the proceeds of the sale, the consideration going directly to the discharge of the existing community debts.

[2] It is equally well settled that the surviving spouse may sell the community homestead to pay community debts, even though the estate is insolvent. Ashe v. Yungst, supra; Fagan v. McWhirter, 71 Tex. 569, 9 S. W. 677; Burkitt v. Key, 42 S. W. 232; Watts v. Miller, 76 Tex. 15, 13 S. W. 16; Cage v. Tucker, 14 Tex. Civ. App. 316, 37 S. W. 181; Martin v. McAllister, 94 Tex. 570, 63 S. W. 624.

[3] The children have no interest in the homestead, as such, as against the surviving parent. Fagan v. McWhirter, supra; Salmons v. Thomas, 25 Tex. Civ. App. 422, 62 S. W. 104.

[4] Conceding for the sake of argument that there were no community debts, we are still of the opinion that Morse, having qualified as survivor under the statute, had a legal right to sell the community property, including the homestead, if he acted in good faith in doing so, and that his deed to Bongio, in such circumstances, would have conveyed to the latter a valid title as against the plaintiffs in error. Sayles' Civil Statutes, art. 2226, 2227. It was so held under the act of August 26, 1856 (Laws 1856, c. 123). Dawson v. Holt, 44 Tex. 177, and the decision in that case is approved in Cordier v. Cage, 44 Tex. 535; Wenar v. Stenzel, 48 Tex. 489; Johnson v. Taylor, 43 Tex. 121.

Plaintiffs in error seem to concede the correctness of these decisions, based upon the act of August 26, 1856, but contend that this act gave to the survivor who qualified under it greater powers than those conferred under the present law, and undertake to demonstrate this by a comparison of the various provisions of the acts. It is true that the latter act requires greater strictness in all matters leading up to the qualification of the survivor. In the old act it was only necessary for the survivor to file in the county court a full, fair, and complete inventory and appraisement of the community property of himself and his deceased wife, which was required to be taken and recorded as in cases of administration, and this gave him the right to manage, control, and dispose of the community estate in such manner as to him should seem best for the interest of the estate. No application to the court was necessary, and no bond required, and the appraisement could be made by the survivor himself. Cordier v. Cage, 44 Tex. 532. Under the present law, which was in force at the date of the death of Mrs. Morse, the survivor is required to make application for the appointment of appraisers, execute a bond in a sum equal to the whole of the value of the community property, conditioned as required by law, and, with the assistance of appraisers, make out and return to the court a full, fair, and complete inventory and appraisement of the community estate, and attach thereto a list of all community debts due the estate, which inventory and list are required to be sworn to. Upon being presented with the application, it is made the duty of the county judge to appoint appraisers, and, after the return of the inventory, appraisement, and list of claims, it is made his duty to approve or disapprove the same by an order entered on the minutes, and, if approved, they must be recorded upon the minutes of the court and the order approving same shall also authorize the survivor to control, manage, and dispose of such community estate. Article 2227, Sayles' Civil Statutes, provides, in substance, that, when the order approving the inventory, appraisement, and list of claims has been entered, the survivor, without any further action of the county court, shall have the right to control, manage, and dispose of the community property in such manner as may seem best for the interest of the estate. It will be seen from the foregoing comparison of the two statutes that, after the survivor has complied with the law governing his qualification, his rights with reference to the community estate are the same; that is, he is authorized by both to "control, manage and dispose" of it. If Dawson v. Holt, supra, and other cases cited, correctly construe Acts 1856, then there can be no other interpretation of the present law than that the survivor, who has qualified as such in accordance therewith, has the right to sell the community property, even though it be the community homestead, independently of the existence of community debts, if this course shall seem to him for the best interest of the estate. Huppman v. Schmidt, 65 Tex. 585; Graham v. Miller, 26 Tex. Civ. App. 7, 62 S. W. 113; Brown v. Seaman, 65 Tex. 628; Withrow v. Adams, 4 Tex. Civ. App. 438, 23 S. W. 441; Williams v. Steele, 101 Tex. 387, 108 S. W. 155.

It follows that judgment was properly rendered for the defendant in error. The action of the court in sustaining objections to the documentary evidence offered by plaintiffs in error, and complained of by them in the other assignments of error, was correct, or, if incorrect, the error in excluding them was, in view of the foregoing conclusions, immaterial and harmless. We find no reversible error in the record, and the judgment of the court below is affirmed.

Affirmed.