STONE et al. v. LIGHT et al. (No. 9519.)

(Court of Civil Appeals of Texas. Fort Worth. Dec. 24, 1920.)

1. **Husband and wife** ⬤═273(10) — **Purchaser of community property from surviving spouse not charged with duty to see·price applied to community debts.**

A surviving spouse is authorized by law to sell community property for the payment of debts, and the purchaser of such property so sold is not charged with the duty to see the purchase money is applied to the payment of the community debts.

2. **Husband and wife** ⬤═273(9)—**Fact husband had changed form of community debt and payee did not change· character.**

The fact that a surviving husband had changed the form of a community debt and the payee prior to his sale of community property to pay debts did not make the debt any the less a community debt.

3. **Husband and wife** ⬤═276(6) — **Community administrator authorized to sell property, though there were no debts.**

A surviving husband, having qualified as community administrator, had authority to sell community property without the existence of debts, and his failure to sign deed to the purchaser as community administrator would not affect its validity.

4. **Husband and wife** ⬤═273(10) — **Purchaser from surviving husband obligated to prove only community debts, status of community property, and fact grantor was survivor.**

In trespass to try title by heirs of a deceased wife against the purchaser from the surviving husband who sold to pay community debts, defendant purchaser was required only to show the existence of community debts to justify the sale to him by the surviving husband, together with the fact of the land being community property and his grantor the survivor of the community.

5. **Evidence** ⬤═183(15)—**Copy of deed properly admitted without affidavit as to loss of or inability to produce original.**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 7749, in trespass to try title by heirs of a deceased wife against the purchaser from the surviving husband, who sold to pay community debts, certified copy of deed from the surviving husband to defendant purchaser *held* properly admitted in evidence, though there was no affidavit made to show loss of or inability to produce the original.

6. **Appeal and error** ⬤═1050(1)—**Admission of copy of deed without affidavit of loss harmless where fact otherwise testified to.**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 7749, in trespass to try title by heirs of a deceased wife against the purchaser from the surviving husband, who sold to pay community debts, any error in admitting in evidence without affidavit made to show loss of or inability to produce the original certified copy of deed from the surviving husband to defendant purchaser *held* harmless to plaintiff heirs; the sur-. viving husband having testified prior to the offer in evidence that he had so deeded the land to the purchaser.

Appeal from District Court, Eastland County; E. A. Hill, Judge.

Suit by Leroy Stone and others against O. J. Light and others. From judgment for defendants, plaintiffs appeal. Affirmed.

R. W. Haynie, of Abilene, for appellants. Burkett, Anderson & Orr, of Eastland, for appellees.

BUCK, J. This is a suit in form of trespass, to try title to one-half undivided interest in the east one-half of the northwest one-fourth of section No. 5, block 4, Houston & Texas Central Railway Company survey, in Eastland county, instituted by the children of Mrs. Catherine Stone, deceased, former wife of M. T. Stone, against O. J. Light and

wife, Mrs. Mattie Light, and the States Oil Corporation, in the district court of Eastland county. The Lights answered by plea of not guilty, a general denial, a plea of three-year limitation, a plea of purchase for a valuable consideration from the father of plaintiffs, who had qualified as community administrator of the estate of himself and his deceased wife, and also that the sale of the land by said M. T. Stone was in order to pay community debts. The States Oil Corporation adopted the answer of the Lights, and specially pleaded that it held an oil and gas lease on said land from its owners, the Lights. The cause was tried before a jury on special issues, and in answer to which the jury found:

(1) That the sale on or about January, 1909, of the land by M. T. Stone to his brother-in-law, W. N. Wells, was a bona fide sale, and not one made for the purpose of obtaining a loan.

(2) That the transfer of the property by M. T. Stone to O. J. Light was made for the purpose of paying community debts of the said Stone and his deceased wife.

(3) That there existed a necessity for the sale of the land for the purpose of paying such community debts.

(4) That the recitation in the deed from W. N. Wells and wife to M. T. Stone that the consideration had been paid out of the separate estate of said M. T. Stone was not made for the purpose of placing the title to said property in the separate estate of M. T. Stone.

Upon this verdict the court entered judgment for the defendant, and the plaintiffs have appealed.

The evidence tends to show the following state of facts to wit: Mrs. Catherine Stone died June 25, 1908, leaving surviving her seven children, one of them having died shortly after the mother's death. At the time of her death the family occupied as a homestead 160 acres of land, being the northwest one-fourth of section No. 5, block No. 4, Houston & Texas Central Railway Company survey, the east one-half of which is in controversy. Prior to the death of Mrs. Stone Mr. Stone had bought the land from the railroad company, paying $106 in cash, and giving seven vendor's lien notes for the balance of $640. He owed these notes at the time of his wife's death, besides some $350 community debts to other parties. Stone was hard pressed financially after his wife's death, and in January thereafter he sold the property to W. N. Wells, his wife's brother and a single man, for a recited consideration of $1,800, of which $900 was recited to be paid in cash, and $900 evidenced by a note due one year from date. This deed was executed by Stone as community administrator, he having qualified as such prior thereto. On June 10, 1909, W. N. Wells reconveyed the property to M. T. Stone for a re-

cited consideration of $1,900, of which $1,200 was recited to be paid in cash, and the assumption of a $700 incumbrance on the land due the W. C. Belcher Land Mortgage Company. This deed was not put of record, and on May 8, 1913, Wells and his wife, he having married in the meantime, by another deed conveyed the same property to Stone for the same recited consideration. Wells never testified and Stone was the only one who testified as to the purpose of these deeds, one from Stone to Wells, the other from Wells to Stone. He stated that it was for the purpose of getting a loan on the homestead; that his lawyer told him it would be necessary for him to leave the property and abandon it as a homestead, and that in compliance with this advice he took his children and left the county for some three months; in the meantime Wells secured the loan from the Belcher Land Mortgage Company; that no consideration other than the notes was passed between the parties. The last deed from Wells to Stone recited that the consideration from Stone was paid out of the separate estate. The first deed from Wells to Stone was made to Stone "and his heirs." At the time of the first conveyance from Wells to Stone the former paid the latter the $700 secured from the mortgage company, with which Stone paid at least $500 on community debts. and used the balance towards the support of his family.

On May 8, 1913, M. T. Stone conveyed to J. B. Cunningham the north one-half of his homestead for a cash recited consideration of $225 and the assumption of the $700 mortgage company note given on the entire tract. On May 12, 1914, Cunningham reconveyed this property to Stone. No cash consideration passed between the parties in either of these transactions. On March 22, 1915, M. T. Stone conveyed to O. J. Light the east one-half of the original 160 acres for a recited consideration of $230, to be paid in property, and the assumption by Light of the Belcher Land Mortgage Company note on the entire 160-acre tract, recited to be $1,000, Stone signing the deed individually, and not as community administrator. In reality Light paid and agreed to pay $990 for the land, including the note for $700 and interest thereon to the mortgage company. At the time of the purchase and for several years prior thereto Light lived with his father, a near neighbor to the Stones, and knew of the death of Mrs. Stone, the existence of children, and the qualification of Mr. Stone as community survivor. At the time Mr. Stone sold the land he told Light that he had to sell it in order to save his other land. He stated to Light that he was in hard circumstances and owed debts and could not borrow the money. Light paid the full market value of the land at the time.

[1-3] We think the evidence is ample to sustain the validity of the sale by Stone to

Light upon either of two grounds, either as a sale by the surviving spouse to pay community debts or as a sale by the community administrator. The evidence shows that Stone had been owing ever since his wife's death debts contracted during their marriage. The loan secured by Wells from the Belcher Land Mortgage Company was made apparently for the purpose of getting money to pay community debts then owing, and Stone never paid this loan so secured up to the time the land in controversy was purchased by Light. The surviving spouse is authorized by law to sell community property for the payment of debts, and the purchaser of such property so sold is not charged with the duty of seeing that the purchase money is applied to the payment of community debts. Morse v. Nibbs, 150 S. W. 766, writ refused; Withrow v. Adams, 4 Tex. Civ. App. 438, 23 S. W. 437, writ refused; Ashe v. Yungst, 65 Tex. 631. The evidence in the instant case shows without contradiction that at the time Light bought this land Stone owed community debts. The fact that he had changed the form of the debt and the payee does not make the debts to the mortgage company any less a community debt. Moreover, Stone having qualified as a community administrator, he had authority to sell the community property without the existence of debts, and his failure to sign the deed as community administrator would not affect the validity thereof. Jones v. Jones' Heirs, 15 Tex. 143, 65 Am. Dec. 174; Primm v. Barton, 18 Tex. 206; Dawson v. Holt, 44 Tex. 174, 178; Jones v. Harris, 139 S. W. 69.

[4] Appellants urge that the court erred in refusing to give their specially requested charge that the burden of proof was on defendants below to show the existence of circumstances authorizing the sale of the property—that is, the existence of community debts. The evidence shows without contradiction that Light assumed a debt of $700 on the entire homestead, and that he gave two cows valued at $120 and the use of the tract for the current year. Hence, it becomes immaterial whether the charge given by the court, to wit, that "in all civil actions, the burden of proof is upon the party having the affirmative of an allegation to establish the same by a preponderance of the evidence," would have been sufficient if the evidence had been contradictory upon this point. The evidence showed unmistakably the existence of community debts, which is all the purchaser is required to show, in addition to the fact of the land being community property and the grantor the survivor. Norwood v. King, 155 S. W. 366, writ refused.

We do not think question No. 4, in which the jury was asked whether the sale by Stone to W. N. Wells was a bona fide sale or one made for the purpose of effecting a loan, and which the jury answered that it was a bona fide sale, is a material inquiry, and

therefore we overrule the tenth assignment attacking the finding of the jury as to this issue. Light's title in no way depended upon the question of whether it was or was not a bona fide sale.

[5, 6] The eighth assignment is directed to the overruling of plaintiffs' exception to the introduction in evidence of the certified copy of the deed from Stone to Light, dated March 22, 1915, because no affidavit was made to show the loss of or inability to produce the original. Article 7749, V. S. Tex. Civ. Statutes, under the title of "Trespass to Try Title," provides:

"It shall not be necessary for the plaintiff to deraign title beyond a common source, and proof of a common source may be made by the plaintiff by certified copies of the deeds showing a chain of title to the defendant emanating from and under such common source; but before any such certified copies shall be read in evidence they shall be filed with the papers of the suit three days before the trial, and the adverse party served with notice of such filing as in other cases; provided, that such certified copies shall not be evidence of title in the defendant, unless offered in evidence by him; and the plaintiff shall not be precluded from making any legal objection to such certified copies, or the originals thereof, when introduced by the defendant."

Appellees state under their counter proposition to this assignment that the certified copy of this deed was duly filed the required length of time before the trial and due notice given plaintiffs' attorneys, which fact appellants do not deny. This article seems to dispense with proof of the inability of a party to a suit to produce an original deed or other papers to show that he claimed under a common source. Under such article, copies can be used without first accounting for the absence of the original. Ogden & Johnson v. Bosse, 86 Tex. 336, 24 S. W. 798. Article 3700 of the Revised Statutes, providing for the admission in evidence of deeds or instruments recorded for a period of 10 years in the office of the county clerk, and providing the method to be followed for the introduction of a certified copy of such recorded instruments where the original has been lost, was originally passed in 1846. Article 7749 was originally passed in 1871, some 25 years later, and provides a method of proving title by means of certified copies of the instruments on file with the county clerk without first accounting for the loss of the originals. The last article is apparently a modification or extension of the former. We believe no error was committed in admitting the certified copy in evidence, giving full force to the undenied statement of appellees that it was on file with the papers of the case 3 days before the trial. But, if any error was committed, it is harmless error, inasmuch as M. T. Stone, without objection, testified prior to the offer of the copy

that he had deeded to O. J. Light the land in controversy.

All assignments are overruled, and the judgment is affirmed.