WILSON LUMPKIN, EXECUTOR, ET AL. v. AMANDA E. MURRELL
AND HUSBAND.

1. ASSIGNMENT OF ERRORS.—When the assignment of errors points out no specific error, this court will not reverse, except for errors manifest in the record, going to the foundation of the action, or because the judgment appears to have resulted from manifest error, and to be in its effects too grossly inequitable to receive the sanction and approval of a court of justice.

2. CONVERSION—TRUST PROPERTY.—We know of no rule by which one can be held to have converted property to his own use and still hold it in trust for the owner. The owner may have the right to elect whatever he will sue for tort or bring his bill for an account, but it would be inequitable for him to do both.

3. COMMUNITY PROPERTY—RIGHTS OF SURVIVOR.—It seems that the surviving husband, who has kept control of and has managed the community property after the death of the wife, should not be

charged with the wrongful conversion of such property in a suit by the heirs of the wife, such possession being lawful, and his liability being only as trustee.

4. COMMUNITY-PROPERTY ACT.—The statute of August 26, 1857, (Paschal's Dig., 4647–49,) seems to have been intended as a privilege and not as a limitation upon the rights of the surviving husband. If he fails to avail himself of it, he may be held to a stricter accountability than that imposed by the statute, in the settlement with those jointly interested with him in the property.

5. LIMITATION—SAME.—In a suit for conversion in such case, limitation would run from the date of such act complained of.

6. SEE DISCUSSION of charges improperly allowed in a suit by the children of deceased wife against the estate of the surviving husband—rents, hire of slaves, interest, &c.

7. CONFEDERATE MONEY.—The court will take notice of the absence of money, other than Confederate bills or notes, during the Confederate war; and will not allow for rents, interest, hire, &c., against a trustee, without proof that they were actually received during that period, and by the trustee.

8. COMMUNITY PROPERTY—ESTATES—SETTLEMENT.—To settle on just and equitable principles the rights of the children of a former marriage, claiming in right of their mother against the children of a second marriage, and some of the children claiming under a will of the surviving husband, an account should be taken between the estate and heirs of the first wife, and that belonging to such heirs partitioned among them; as to the residue, the legatees should have the privilege of electing whether they will take as heirs or legatees.

9. EXPENSES OF REPAIRS.—In this case the expenses of repairs of a storehouse were charged to one heir, (by oversight:) *Held*, Error; her *pro rata* of interest should bear the same proportion of expense of repairs.

APPEAL from Anderson.    Tried below before the Hon. M. H. Bonner.

This case can be understood from the opinion. The nature of the controversy does not admit of an abstract of the pleadings, exhibits, evidence, orders, &c., contained in the record of about four hundred pages.

The case went to the jury on twenty-six special issues. They and the assignment of errors sufficiently appear in the opinion; except that the second of the assignments by appellee, pointed out that in the account the whole of expenses of

repairing a storehouse had been charged to the share of plaintiffs instead of to the estate.

*Word & Williams,* for appellant.

*Reagan, Greenwood & Gooch,* for appellee.

MOORE, ASSOCIATE JUSTICE.—This suit was brought by appellees to recover from the appellant Lumpkin, the executor of John Murchison, deceased, her father, the share or interest which she claimed as an heir of her deceased mother, Pauline H. Murchison, in the community estate of her said father and mother, as well as her part of her mother's separate estate, which had come into his hands as such executor, and to recover for use, occupation, and enjoyment of said property, together with interest thereon, and all profits derived, or which by reasonable diligence might have been derived, therefrom by her father subsequently to her mother's death, and by said executor, and also for damages for the improper and unauthorized use and wrongful conversion of any of said property by her father or said executor.

It is alleged in the pleading, and the evidence shows, that said John Murchison and his first wife, Pauline H. Murchison, were married in the Republic of Texas on the 16th day of July, 1843; that said Pauline died on the 16th of August, 1859, leaving as the issue of said marriage the plaintiff, Amanda E., and the defendants, John M. Murchison and William E. D. Murchison, all of whom were then minors; that at the date of said Pauline's death both she and her husband owned separate estates, and were possessed of a considerable amount of both real and personal property belonging to them in common, against which, so far as is shown in the record, there were no debt or incumbrance of any character. Said Pauline died intestate, and no administration was ever had on her estate; and said Murchison, without having any inventory and appraisement of community estate of himself and wife made and filed in the County Court, retained pos-

session of all of said community property, and occupied, used, and disposed of the same in the manner he had done prior to said Pauline's death; that on the 4th day of April, 1860, said Murchison married his second wife, Mary Bruton, who died on the —— day of March, 1865, leaving surviving her, as the issue of this marriage, the defendant, William H. Murchison. During this marriage said Murchison was engaged in, and carried on large business transactions, some of which had been undertaken and commenced during the life of his first wife, and at the death of his second wife was in possession of a large amount of both real and personal property, all of which appellees seem to insist was purchased or procured with the community property of the first marriage or the profits derived from the use and disposition made of it; and without making an inventory of the community property of himself and second wife, Murchison still continued, after her death, to deal with and use all the property in his possession and under his control as if it was his separate estate, until his death, on the 15th of April, 1872; and in making his will he seems to have been oblivious of the fact that his children owned an interest in, or could justly assert a claim to any part of it.

The appellees, B. F. Murrell and Amanda E. Murrell, were married on the 15th day of August, 1865, she being then about sixteen years of age. No demand, however, seems ever to have been made of her father, by either her or her husband, for her share of her mother's estate in the community estate or for a settlement thereof; nor does it appear that any such demand was made of the executor prior to the bringing of this suit.

This brief recital of a few of the facts connected with the matter in controversy in this case will show that its proper determination must be attended with serious and unavoidable difficulty and embarrassment.

The difficulty in the proper adjustment of the matters in controversy are obviously in no way lessened, when it is also stated, that at the death of his first wife Murchison was largely

engaged in merchandize, which he continued until some years subsequent to his second marriage; that the personal property belonging to the community consisted mainly of the goods on hand at the date of his wife's death, and notes and accounts owing for goods previously sold; while from the statement of facts there seems to be but slight and unsatisfactory evidence now accessible, which will enable us to say what portion of the assets of the first community were invested in the business done during the second; or what part of the funds which were realized when his mercantile business was finally wound up should go to the one or the other of the respective community estates, and how the heavy losses which the business ultimately suffered, should be apportioned between them.

Considering the magnitude and importance of the questions in this case, and the inherent difficulties involved in their proper determination, and that two of the defendants were minors and represented by guardians *ad litem*, we are constrained to say that a careful examination of the record does not impress us with the conviction that such a solution of them has been attained as fully comports with equity and justice, or as will result in the distribution of the community property of Pauline H. Murchison equally and fairly between her children, or so as not to result in serious injustice to the minor defendant, William H. Murchison, in respect to his interest in the community estate of his mother. But while this is so, it cannot be said that the assignment of errors by appellants points to any tangible and positive error in the record for which the judgment should be reversed, if indeed they are not so vague, indefinite, and general as to preclude our looking to them.

The first error assigned is, that the court erred in its instructions to the jury. The charge is full and somewhat exhaustive in presenting the views of the court upon the points discussed; and the law in respect to them seems to us clearly and forcibly developed. The errors in the judgment,

as we apprehend it, result from a misconception of the true character of appellee's demand, its nature and extent by the parties, and probably to some extent by the court; the failure of appellants to present the proper defenses, and the exaggerated, if not in some instances unwarranted, amount found by the jury in their answers to some of the special issues, rather than from any erroneous instructions from the court on the questions embraced in the charge. But if there are any errors in it, as has been often said, such an assignment as this fails to properly point them out. It is also to be noted that no instructions whatever were asked of the court by appellants.

The second error is in admitting evidence to show the amount of property acquired by Murchison after the death of his wife. In view of the issues upon which the case was tried, it is not seen why such testimony might not have been properly admitted: But if not, the record does not show that any such objection was made or any exception taken to the ruling of the court upon it. The record contains no bill of exceptions taken by appellants to this or any other ruling of the court during the entire course of the trial.

What has been said in reference to the second assignment is equally applicable to the third.

The fourth error complained of is, that the verdict was found without evidence to support it. This assignment, in view of the facts of this case and the number of issues submitted, is evidently too general; it does not point to any specific error. The verdict consists of the response of the jury to twenty-six special issues submitted to them by the court. On many of these issues, if not all of them, the evidence certainly supports the finding.

The fifth error points with more particularity to the finding of the jury complained of. But it evidently is not well taken. There was, undoubtedly, evidence before the jury from which they might have reached their conclusion on a number of the issues submitted to them. Nor was this objec-

tion to the verdict presented to the court in the motion for a new trial, as unquestionably it must have been to enable appellants to avail themselves of it as error.

The remaining error complained of in the assignment, is in overruling the motion for a new trial. The grounds presented in support of this motion are equally vague and indefinite as the assignment of errors.

The first and second grounds of the motion for a new trial merely allege in general terms that the finding of the jury is contrary to the law and contrary to the evidence. The third says the jury disregarded all the rights of the defendant William H. Murchison in the community property of his father and mother. But in what particular his rights were disregarded is not stated. The fourth and last ground for the motion alleges that the verdict of the jury on the various issues submitted to them, does not show such a finding as to enable the court to render a judgment, but wherein it is insufficient is not pointed out.

And, that the case was not presented either in the pleadings of the parties or the special issues submitted by the court in a manner best calculated to lead to its proper determination, it may be replied, if the proper objections to the petition were raised by the demurrer, it does not appear that they were clearly pointed out and called to the attention of the court; and if they were, the ruling of the court upon them is not complained of or assigned as error. No objection was taken to the submission of the case to the jury on special issues, or to any of the issues submitted, suggested, or asked for by appellants. If, therefore, the judgment can be reversed, it must be for errors going to the foundation of the action, or because it plainly appears to have resulted from manifest error, and to be in its effects too grossly inequitable to receive the sanction and approval of a court of justice.

It remains for us to consider whether there is any such error apparent in the record.

From what has been heretofore said, it is manifest that ap-

pellees sought to recover one third of all the real and personal property in the hands of Murchison's executor, which constituted a part of the community estate of Murchison and his first wife; and also to hold the estate liable to a like extent for the value of community property at Mrs. Murchison's death, which has not come to his hands. Appellees seem to suppose that the failure of the surviving father to file an inventory of the community estate of himself and deceased wife is a violation of a duty absolutely incumbent upon him, and that without filing such inventory he can in no way meddle with any of said community property without becoming liable to the heirs of the wife for its wrongful conversion; that the heirs are entitled to recover from the surviving husband the full value of the property at the death of the wife, and interest thereon up to the date of judgment, notwithstanding it has been subsequently destroyed or greatly deteriorated in value, without any fault on his part; and that if any of the property has increased in value, or forfeits have been made from its use, the heirs may have the benefit of such profits and increase in value. To maintain these propositions, the surviving husband must be regarded as having wrongfully converted the wife's share of the property to his own use, and also as holding it, notwithstanding such conversion, in trust for her heirs. It is true, parties who wrongfully intermeddle in the affairs of others may be treated as trustees in their own wrong; but we know of no rule by which one can be held to have converted property to his own use and still hold it in trust for the owner. The owner may have the right to elect whether he will sue for tort, or bring his bill for an account; but surely it would be inequitable for him to do both.

There seems to us serious, if not insuperable, difficulty in holding that Murchison's failure to file an inventory, and his subsequent dealing with the community property, entitles appellees to a recovery for a wrongful conversion. To so hold, would be to ignore his community rights, or to make their

enjoyment depend upon his filing an inventory. The statute seems to us to have been intended as a privilege, and not a restriction or limitation upon the rights of the surviving husband. If he fails to avail himself of it, he may be held to a stricter accountability than that imposed by the statute in a settlement with those jointly interested with him in the property. But though he may be called to account at any time, surely his retention of the property and its preservation from loss, as by use or disposal of such of it as is of a perishable character, the collection of notes which would otherwise be lost, if not his absolute duty, cannot be regarded as a trespass. It is his duty, as has been often said, to settle the community debts, and he may use community property for this purpose. In addition to these suggestions, we may also remark that, if appellee's suit is to be regarded as an action for the value of property wrongfully converted by Murchison, it would seem that they must have been defeated by the plea of limitation interposed by defendants in their answer.

It appears from the special issues submitted to the jury, and the judgment upon them, that the court below, as we think, very properly limited appellee's right to a recovery by Murchison's liability as a trustee of the community property. But although the court seems to have held that Murchison was merely liable as a trustee, we think his estate has been held to a stricter rule of accountability than, in view of all the facts and circumstances of the case, equity and justice demand; and that neither the answers of the jury to the special issues nor the judgment upon them is supported by the evidence or does full justice to all the parties interested in the estate.

By the judgment, Mrs. Murrell's portion of the real and personal property pertaining to the community estate of her father and mother, found in the hands of the executor, is ordered to be set apart to her. She also recovers judgment for her share of the community property sold by the executor. To this we think there can be no objection; but the

court also gives her judgment for one sixth of the rent fixed by the jury on the homestead from the date of Murchison's removal from it until his death, and rent of the storehouse from the time his wife died, and also one sixth of the amount assessed for hire of community negroes from Mrs. Murchison's death until their emancipation, and one third of the hire of the negro found to be the separate property of Mrs. Murchison for the like period, computing interest on each annual installment of rent and hire, though there is no proof that any rent or hire was actually realized by Murchison, and though it is an historical fact of which no one is ignorant, that during a considerable portion of the time that these charges are allowed there was no money in circulation, and such prices for rent and hire could have been realized only in Confederate paper. The entire hire of the negro belonging to Mrs. Murchison's separate estate is treated as belonging to her children, though her husband unquestionably inherited one third of her separate property. She also recovers judgment for one sixth of the full amount realized by Murchison on his *ante bellum* notes and accounts, and of the value of the goods on hand at his wife's death, and interest on both these sums, though it can scarcely be doubted that the notes from which the first of these sums was realized must have accrued in part from the sale of these goods.

By aggregating these different sums it will be found, that the court held appellees entitled to claim from Murchison's estate, in addition to the specific property adjudged to them, something over ten thousand five hundred dollars.

No misappropriation or waste of any of the community property which came into Murchison's hands is shown by the evidence, and, as far as the issues submitted to the jury go in this direction, the verdict repels such a conclusion; yet the jury finds, in reply to issue No. 25, that the amount of the community property, not computing insolvent debts or lands, which came to the hands of the executor is only thirty-eight thousand six hundred and eighty dollars and ninety cents.

This, of course, includes the personal property ordered by the court to be partitioned, which is of the value of three thousand four hundred and forty dollars and fifty cents. Deduct this sum from the amount which came to the executor's hands, there would be thirty-five thousand one hundred and forty dollars and forty cents to be divided, of which appellees' one sixth would be but five thousand eight hundred and fifty-six dollars and seventy-five cents. The discrepancy in the conclusion to be drawn from the finding of the jury on the different issues, may be in part accounted for from the fact that those on which the judgment is rendered are swelled by interest, from the qualification of the executor until the date of the judgment, which was about three years; but it is no doubt in a greater degree attributable to charging for rents and interest never realized, and an amount and interest on it never realized for the goods on hand at Mrs. Murchison's death. It may also be well to note, that while eight per cent. is allowed on fifteen thousand dollars of community funds put into the cotton factory, the entire property, exclusive of the land on which it was situated, and the engine and boiler, on the value of which last appellees were allowed interest, rents for only sixteen hundred and sixty-six and two thirds dollars. Appellees also get the benefit of the original investment, while the property seems from the inventory to have shrunk in value from thirty-five thousand to twenty-two thousand dollars.

There is another fact affecting the correctness of the judgment, which must be adverted to. While the jury find that Murchison collected sixteen thousand dollars from the debts due the community estate of himself and his first wife, there is nothing in the record to warrant or support this finding. The testimony shows that he may have realized this amount from debts due him in and prior to 1861, or when he closed his mercantile business; but his first wife died in August, 1859, and it is proved that he subsequently bought, on one trip to New York, a stock of goods of the value of twenty thousand dollars. He married his second wife in the spring

of 1860, and it is certainly unfair to his child by this marriage to hold that the entire amount realized from the old debts belonged to the community estate of the first wife.

Other objections to the verdict might be pointed out, but enough has been said, we think, to show that to affirm the judgment would result in a most unfair division of the community property of Mrs. Murchison among her children, and would do gross injustice to the minor, William H. Murchison, the issue of the second marriage. And although the case was not presented, either in this or the District Court, as it should have been, justice requires that it should be reversed.

To settle, on just and equitable principles, the rights of the parties, an account should be taken, on fair and equitable principles, between Murchison's estate and the heirs of his wife, Pauline H. Murchison, and one third of the amount for which the executor is found to be accountable to her heirs should be adjudged to appellees. If it should be found that the rights of either of the heirs in the community estate, and as devisee in Murchison's will, conflict, then they should be required to elect whether they will claim as heirs or devisees.

As appellees have also assigned errors, it is proper for us to say, though it seems hardly necessary to do so, that their second assignment is certainly well taken. The ruling in question was merely the result of oversight or inadvertence. What has already been said will suffice in reference to the other assignments.

The judgment is reversed and the cause remanded.