# APRIL, 1916

P. P. PIERCE ET AL. G. T. GIBSON ET AL.

· No. 2454. Decided April 5, 1916.

**1.—Homestead—Abandonment—Insane Wife.**

The husband, acting in good faith, had the right to abandon the homestead and acquire another, though the wife was insane; her consent, though sane, was not necessary to enable him to do so.   (P. 64.)

**2.—Community Property—Sale by Husband—Insane Wife.**

The husband may sell community real estate to pay community debts though the wife is insane (Shields v. Aultman, Miller & Co., 20 Texas Civ. App., 345), and this without making bond under article 3594, Rev. Stats., to acquire the right to dispose of it.   The statute in such case, as in that of her death, was passed to enlarge his power of disposition, not to restrict the power to sell for payment of debts which he already possessed.   (Ashe v. Yungst, 65 Texas, 631; Sanger Bros. v. Heirs of Moody, 60 Texas, 96; Fagan v. McWhirter, 71 Texas, 567; Martin v. McAllister, 94 Texas, 567.)   (Pp. 65-67.)

Error to the Court of Civil Appeals for the Eighth District, in an appeal from Stephens County.

Gibson and others sued Pierce and another and appealed from a judgment in favor of Pierce.   They obtained writ of error when this was reversed and the cause remanded.

*J. R. Stubblefield,* for plaintiff in error.—In the absence of any bad faith on the part of Pettit, he, as the husband and head of the family, had a right to designate the homestead, and having designated a homestead in Guadalupe County, he had the legal right to sell the land in controversy.   McGaughey v. American National Bank, 41 Texas Civ. App., 191, 92 S. W., 1008; Evans v. Daniel, 25 Texas Civ. App., 362, 60 S. W., 1012; McDannell v. Ragsdale, 71 Texas, 26, 8 S. W., 625; Hollman v. Smith, 39 Texas, 362; Slaven v. Wheeler, 61 Texas, 654; 21 Cyc., 606.

Even though Jane Pettit was insane, this fact would not deprive her husband, as the head of the family, of his right to determine what property should become the homestead of the family.   Shields v. Aultman, Miller & Co., 20 Texas Civ. App., 345.

A surviving husband, or the husband of an insane wife, may sell community property, not the homestead, to pay community debts. Shields v. Aultman, Miller & Co., 20 Texas Civ. App., 345; Jones v. Harris, 139 S. W., 69; Davis v. Carter, 119 S. W., 724; Ashe v. Yungst, 65 Texas, 631; Fagan v. McWhirter, 71 Texas, 567, 9 S. W., 677; Martin v. McAlister, 94 Texas, 567, 63 S. W., 624, 56 L. R. A., 586; Jennings v. Barton. 44 Texas Civ. App., 280, 98 S. W., 445; 21 Cyc., 1701; Speer on Law of Married Women, sec. 104, p. 99.

*D. G. Hunt* and *W. P. Sebastian,* for defendants in error.

MR. JUSTICE YANTIS delivered the opinion of the court.

This suit was instituted in the District Court of Stephens County, Texas, by the defendants in error, who were plaintiffs below, against P. P. Pierce and R. Glasscock, to recover 730 acres of land situated partially in Palo Pinto County and partially in Stephens County, Texas.

In the District Court Glasscock filed a disclaimer, and the trial proceeded against Pierce. The case was submitted to the jury on special issues. The trial resulted in a judgment in the District Court in favor of Pierce, who is plaintiff in error here, and against the plaintiffs in said suit in the District Court. By them the case was appealed to the honorable Court of Civil Appeals for the Second District. The appeal was transferred to the honorable Court of Civil Appeals for the Eighth District, in which court the case was reversed and remanded as to Jane P. Pettit, wife of C. I. Pettit, the court holding, that she was entitled to recover one-half of the land sued for. As to the other plaintiffs in the District Court, and as to the remaining one-half interest in the land, the judgment of the District Court was affirmed.

A writ of error was granted by this court on the petition of P. P. Pierce, the plaintiff in error, on the ground of a conflict between the opinion by the Court of Civil Appeals for the Eighth District in this case and the opinion of the Court of Civil Appeals for the Fifth District in the case of Shields v. Aultman, Miller & Co., 20 Texas Civ. App., 345, 50 S. W., 219, in which case a writ of error was denied by this court.

By the findings of the jury in answer to special issues the following facts were established: That C. I. Pettit was of sound mind when he executed the deed to Pierce and Glasscock in May, 1907, and at the time he executed the mortgage in Feruary, 1907; that no part of the property in controversy constituted the homestead of C. I. Pettit at said time, or at the time he executed the mortgage thereon in February, 1907, to secure a loan of $1200; that C. I. Pettit acted in good faith at the time he executed the deed to Pierce and Glasscock in May, 1907, and at the time he executed the mortgage in February, 1907, and was not guilty of any fraudulent attempt to deprive his wife of the benefit of a homestead exemption in the property involved; that when C. I. Pettit abandoned his home in Stephens County, and acquired a new home in another county prior to May, 1907, he acted in good faith in so doing; that at the time Pierce and Glasscock purchased the property from C. I. Pettit in May, 1907, there was a valid and subsisting mortgage against such property in the amount of $1200; that at the time Pierce and Glasscock purchased the property from Pettit in May, 1907, there were no other liens against the property; that the consideration paid by Pierce and Glasscock to C. I. Pettit for the land in controversy was the reasonable cash market value of such land at the time and place it was sold; that Pierce and Glasscock acted in good faith towards C. I.

Pettit when they bought the land in controversy, and did not practice any fraud upon him.

The evidence shows that when C. I. Pettit sold the property in controversy in May, 1907, he paid out of its proceeds the $1200 which he owed thereon, and which was a community debt.

The findings of fact by the Court of Civil Appeals are to the effect that the evidence was sufficient to sustain all the foregoing findings of fact by the jury, in answer to special issues.

It is contended by the defendants in error that the husband of an insane wife can not convey by his deed alone the homestead unless the proof should show that the insanity of the wife was incurable. The findings of the jury in this case were to the effect that none of the property in question was the homestead of Pettit at the time he conveyed the property to Pierce and Glasscock. This finding of fact removes from the case the proposition of law contended for, and renders it unnecessary for us to consider the question of law as to the effect of a husband's deed of conveyance of the homestead while the wife is insane, since in this case there was no homestead at the time of sale. The property in question was the homestead of C. I. Pettit and his wife, Jane, for many years. In January, 1901, the wife was adjudged insane, and was sent to a lunatic asylum, where she remained until during the trial of this case, when she appears to have been released, and to have attended the trial, though she did not testify as a witness, and there is no evidence showing either that she had or had not been restored to a sane condition. C. I. Pettit, and his children, continued to occupy the land as a homestead for about four years subsequent to the insanity of his wife. Having contracted tuberculosis, he moved to San Antonio, where he acquired another home, which he occupied for about one year. Later, in 1906, he acquired another home, and occupied it as such, in Guadalupe County, for about one year. He mortgaged the property in controversy in February, 1907, for $1200. On May 16, 1907, he conveyed it to P. P. Pierce and R. Glasscock for a cash consideration of $4357.50. Later Glasscock conveyed his interest in the land to Pierce.

The homestead in Stephens County ceased to be such when it was abandoned by C. I. Pettit with the intention of making his home in South Texas, in the interest of his health. His abandonment of the homestead being in good faith, as found by the jury, it was his right and privilege in law to so abandon it and establish another home. The husband has a legal right, while acting in good faith, to abandon the homestead and acquire a new one without the consent of his wife. The fact that she was insane and unable to give her consent would not defeat this right on his part, since her consent to the abandonment of a homestead, and the acquiring of a new one, is not necessary. The fact that she became insane, and could not give her consent, would in no way alter the situation, or destroy his rights in this respect. Shields v. Aultman, Miller & Co., 20 Texas Civ. App., 345, 50 S. W., 219.

The honorable Court of Civil Appeals rested its holding in reversing the case as to one-half the property, on the proposition that C. I. Pettit's deed to Pierce and Glasscock, in so far as it attempted to convey the wife's one-half interest in said community property was void, for the reason that he could not convey her one-half interest in the community property without qualifying, which he had not done, as survivor, and making a survivorship bond, under article 3594, chapter 28, title 52, Vernon's Sayles' Texas Civil Statutes, which is as follows:

"Where the wife dies or becomes insane, leaving a surviving husband and child, or children, the husband shall have the exclusive management, control and disposition of the community property in the same manner as during her lifetime, 'or sanity; and it shall not be necessary that the insane wife shall join in conveyances of such property, or her privy examination and acknowledgment be taken to such conveyances, subject, however, to the provisions of this chapter."

We do not think this article of the statutes in any way abridged the right of the husband to sell the property for the purpose of liquidating community debts, though the other provisions in said chapter make provision for community administration and survivorship bond. It was all community property, and was charged with the payment of the community debts. It has been held by this court, in a long and unbroken line of decisions, that the husband upon the death of his wife may, without administration upon her estate, sell the community property to pay community debts. Ashe v. Yungst, 65 Texas, 631; Sanger Bros. v. Heirs of Moody, 60 Texas, 96; Fagan v. McWhirter, 71 Texas, 567, 9 S. W., 677; Martin v. McAllister, 94 Texas, 567, 56 L. R. A., 585, 63 S. W., 624.

We hold that the rule should be the same where the wife is not dead but insane. It has never been doubted that during the life of the wife the husband could sell any community property except the homestead, for the purpose of liquidating community debts. They are a charge upon the partnership property of a husband and wife as much as are the debts of any other partnership a charge upon the partnership property. The survivor of the partnership is charged with the duty of paying the partnership debts, and it is his right to dispose of partnership property for such purpose. So it has been held unnecessary when the wife dies leaving community property, and community debts, for the surviving husband to cause administration to be had, or to qualify as survivor by giving the bond provided for in article 3598, chapter 29, title 52, Vernon's Sayles' Civil Statutes, in order to dispose of the community property for the purpose of settling the community debts. We think that C. I. Pettit was not deprived of this right because of the insanity of his wife. It is true, as held by the Court of Civil Appeals in its opinion in this case, that when the case of Shields v. Aultman, Miller & Co., 20 Texas Civ. App., 345, 50 S. W., 219, was decided, article 3594, Vernon's Sayles' Civil Statutes, did not contain any provision for a surviving husband, when the wife became insane, to qualify

as a survivor under said chapter. At that time the chapter in question authorized community administration as it does now, but it only provided for instances where the wife had died, leaving a surviving husband and child. The change in the chapter was made by amendment in 1893 so as to allow the husband, when the wife became insane, to qualify by giving bond as a survivor on the same basis that said chapter had previously permitted survivorship administration in favor of the husband where the wife had died. But we think the rule is the same.

Prior to this amendment it had been held by this court in many cases that the statute authorizing survivorship administration in case of the death of the wife, was not an abridgment of the right of the surviving husband to sell community property for the purpose of paying community debts without making the bond and complying with the survivorship statute. This statute, authorizing survivorship administration in case of death of the wife, with the omission of the insanity clause, had existed since 1856, but notwithstanding its existence in full force, this court repeatedly construed it as not being restrictive of the rights of the survivor, but merely to be an enlargement of his privileges existing at the time of its passage; and it was held that it was not mandatory upon the survivor to qualify under chapter 28, title 52, Vernon's Sayles' Statutes, as survivor, in order to authorize the survivor to sell community property with which to pay the community debts.

In passing upon this question this court, speaking through Mr. Justice Ireland, in the case of Dawson v. Holt, 44 Texas, 178, said:

"It is contended that the latter clause of the law as quoted is to be construed literally and strictly, and that the authority of the husband to sell did not attach until after the probate court had 'recorded' the inventory and appraisement.

"It must be borne in mind that the surviving husband had the right to sell the community property to pay debts against the community, after the death of the wife, without the aid of this statute. (Jones v. Jones, 15 Texas, 147.) It was clearly not the intention of the Legislature to throw restrictions around the survivor in such cases, but to enlarge their powers."

Again this court, speaking through Mr. Justice Stayton, in the case of Sanger Brothers v. Heirs of Moody, 60 Texas, 98, says:

"It is claimed that as community indebtedness was shown to exist at the time the land was sold by Louis Moody to Birge, the sale should be held valid.

"Upon the repeated decisions of this court it must be held as conclusively settled, that the survivor of the marital relation, without administration upon the estate of the deceased member in any of the modes expressly provided by statute, has power as survivor to sell the community property for the purpose of paying debts which are a charge upon it, and by law such property is charged with the payment of debts contracted during the marriage. Pasch. Dig., 4646.

"It has been properly held that the Act of 1856 did not withdraw such power from the survivor; but that the Act was intended to enlarge the

powers of the survivor.  Wenar v. Stenzel, 48 Texas, 489; Dawson v. Holt, 44 Texas, 178; Lumpkin v. Murrill, 46 Texas, 51."

There are many other decisions to the same effect, and holding that the survivorship statute did not deprive the surviving husband of the power to sell community property and with the proceeds to discharge community debts.  Jones v. Jones, 15 Texas, 147; Dawson v. Holt, 44 Texas, 174; Lumpkin v. Murrill, 46 Texas, 51.

We think the rule is the same since the amendment of the statute authorizing the husband, in case of his wife's insanity, to qualify as survivor.  The statute as so amended must be held to be an enlargement of the rights of the survivor of an insane spouse, and not an abridgment thereof.  Prior to this amendment it was the undoubted right of the husband of an insane wife to sell community property for the purpose of paying community debts, and we think he still has such right, and that he need not qualify under the survivorship statute in order to exercise it.  The rule as to selling community property, with the proceeds of which to pay community debts, should be the same now, where the wife becomes insane, as it was prior to this amendment, in cases where the wife had died.  We think the Court of Civil Appeals was in error in holding that Pettit's deed was void because he had not qualified as survivor under chapter 28, title 52, Vernon's Sayles' Civil Statutes. We think the deed was valid, and conveyed all the land in controversy to Pierce and Glasscock.

We have examined the other questions presented by the defendants in error and do not think any of them presents error.

It follows that the judgment of the Court of Civil Appeals should be reversed and the judgment of the District Court should in all things be affirmed, and it is so ordered.

*Reversed and judgment of District Court affirmed.*