**GREEN et al. v. WINDHAM et al.   (No. 669.)**

(Court of Civil Appeals of Texas. Beaumont. April 7, 1921. Rehearing Denied May 4, 1921.)

1. **Appeal and error** &lt;key&gt;724(2)&mdash;**Assignments considered, though not distinctly specifying grounds of error.**

Though assignments of error do not "distinctly specify the grounds of error relied on," as required by Court of Civil Appeal Rules 24, 25 (142 S. W. xii), they will be considered, being sufficient to call attention to the state of the record, and any error being one of law; there being no conflict in the testimony.

2. **Homestead** &lt;key&gt;146&mdash;**Husband and wife** &lt;key&gt; 276(6)&mdash;**Husband of insane woman qualifying as community administrator can convey community property, including homestead, though there are no debts.**

Under Vernon's Sayles' Ann. Civ. St. 1914, arts. 3594, 3600, the husband of an insane woman, being empowered on qualifying as community administrator to dispose of the community estate as he deems best for the interest of the estate, can convey it, though there be no community debts, and though it be the community homestead.

Appeal from District Court, Shelby County; Chas. L. Brachfield, Judge.

Action by D. G. Green and others against J. H. Windham and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

D. M. Short, of Center, for appellants.
Sanders &amp; Sanders, of Center, for appellees.

O'QUINN, J.   Appellants sued appellees to cancel a deed executed by D. G. Green for himself and as administrator of the community estate of his insane wife, Jennie Green, to J. H. Windham and W. C. Windham, dated May 23, 1919, on the ground that at the time of the execution of the deed the said Jennie Green had theretofore been convicted of lunacy, and was at the time, and long prior thereto, confined in the insane asylum at Terrell, Tex.; that said D. G. Green, after said conviction, had duly qualified as administrator of the community estate of himself and his insane wife; that the land conveyed in said deed so executed by the said D. G. Green to appellees was at the time, and had been long prior thereto, the community homestead of said D. G. Green and his said wife, Jennie Green, but that the said Jennie Green did not live and stay at said home, but was confined in said insane asylum; and that at the time said deed was so executed by the said D. G. Green there were no community debts, and hence said deed was executed without lawful authority, and void.

Appellees answered by general denial, plea of not guilty, and cross-action in form of trespass to try title, the prayer being that they have judgment for the title and possession of the land. Guardian at litem was appointed for said Jennie Green, who answered for her to appellees' cross-action, and adopted the pleadings of appellants.

The case was tried before the court, and judgment rendered that appellants take nothing by their suit, and that appellees recover from D. G. Green and Jennie Green the title and possession of said land, with costs of suit, from which said judgment appellants have appealed.

At the close of the oral testimony and the introduction of documentary evidence offered by both parties, the said parties made and the record contains the following agreed statement of the facts, which we deem sufficient for a clear understanding of the matters involved, to wit:

"(30) It was then admitted by all parties to this suit, that Mrs. Jennie Green, wife of D. G. Green, was on October 16, 1916, on legal com-

plaint filed against her in the probate court of Shelby county, Tex., adjudged insane by a lunacy commission. This being in cause No. 701 on the docket of probate court of Shelby county, Tex., and under this judgment of conviction, the said Mrs. Jennie Green was committed to the insane asylum at Terrell, Tex., all of which complaint, judgment, verdict of said jury, commission, and all necessary orders in connection therewith are of record in the probate minutes of Shelby county, Tex. The said jury commission having been duly sworn according to law.

"(31) Thereafter, and on April 22, 1918, and in cause No. 785, on the docket of probate court of Shelby county, Tex., D. G. Green, the husband of Jennie Green, presented his application to the probate court of Shelby county, Tex., to be appointed community administrator of the community property of himself and said Jennie Green, which application was granted on April 22, 1918, and D. G. Green so appointed community administrator of the estate of Jennie Green, his insane wife, and three legal appraisers of Shelby county, Tex., were appointed to appraise the community estate of said D. G. Green and his insane wife, Jennie Green, which inventory and appraisement was returned into the probate court of Shelby county, Tex., within the time required by law, and the said D. G. Green returned into said court his bond within the time required by law as such community administrator, conditioned and payable as the law directs as such community administrator, which bond and inventory were, on April 22, 1918, duly and legally approved by the probate court of Shelby county, Tex., all of which is duly and legally recorded in the probate minutes of Shelby county, Tex.

"Upon the approval of bond and inventory, the said D. G. Green as such community administrator by the judgment so approving said bond and inventory was by the probate court of Shelby county, Tex., granted the right to control, manage, and dispose of such community property, real or personal, in such manner as might seem best for the interest of said community estate, and to manage, control, and dispose of same as the law directs, all of which is manifest by the records of the probate court of Shelby county, Tex.

"The aforesaid inventory having been sworn to by said competent appraisers, and also by said D. G. Green, and the said D. G. Green then took the proper oath of office as such community administrator, all of which is of record in the probate minutes of Shelby county, Tex.

"The said inventory showing the property in controversy to be the community property of said D. G. and Jennie Green, and also disclosed a cow and horse as the community property of the said D. G. and Jennie Green. The said inventory showing conclusively that there were no community debts due by D. G. and Jennie Green or either of them. The land in controversy was the only real estate, and it was the homestead of D. G. and Jennie Green. The said Mrs. Jennie Green then being in the insane asylum at Terrell, Tex.

"(32) Some question having arisen as to the legality of the conviction of Mrs. Jennie Green as a lunatic, she was brought from the insane asylum of Terrell, Tex., to Shelby county, and on May 19, 1919, another legal complaint was filed against her, charging her with lunacy, and it was to the welfare to herself and others that she be placed under restraint, and a legal jury, consisting of jurors of Shelby county, Tex., was then impaneled and sworn as the law directs, and said jury, after hearing the testimony, returned into court the answers to the special issues submitted for their consideration as the law directs, which verdict of the jury disclosed that Mrs. Jennie Green was a lunatic, and of unsound mind, and that she be placed under restraint, and thereupon a legal judgment was entered in the probate court of Shelby county, Tex., legally adjudging Mrs. Jennie Green to be of unsound mind, and for the benefit of herself and others that she be placed under restraint, and thereupon she was legally committed to the insane asylum at Terrell, Tex.

"All these proceedings in said probate court of Shelby county, Tex., were made on May 19, 1919, and in cause No. 858, all of which are of record in the probate court of Shelby county, Tex., and the said Mrs. Jennie Green being present in court and under arrest at the time of such trial, and it is further admitted that she was legally tried and legally adjudged to be of unsound mind by the probate court of Shelby county, Tex., on May 19, 1919, and was then legally committed to the insane asylum at Terrell, Tex.

"(33) It is further admitted that on May 20, 1919, in cause No. 859, the said D. G. Green made his application to the probate court of Shelby county, Tex., to be appointed community administrator of the community estate of Jennie Green, his insane wife. The said application was in legal form, and properly charged Jennie Green, his wife, with having been legally adjudged insane by the probate court of Shelby county, Tex.

"On May 20, 1919, the probate court of Shelby county, Tex., granted the application of the said D. G. Green, and appointed him community administrator of the estate of Jennie Green, his insane wife, and appointed three legal appraisers of Shelby county, Tex., to appraise such community estate, and required of the said D. G. Green a legal bond in the amount and conditioned as the law directs.

"The report of said appraisers was, within the time required by law, returned into court properly sworn to by said appraisers and by said D. G. Green, showing the property in controversy to be the community property of D. G. Green, and his insane wife, Jennie Green. The said bond so required of D. G. Green was executed by him in an amount 'conditioned and payable as the law directs, was also returned into the probate court of Shelby county, Tex., within the time required by law, thereafter the probate court of Shelby county, Tex., on May 20, 1919, approved said bond and inventory, and by judgment of the probate court of Shelby county, Tex., authorized and directed the said D. G. Green to manage, control, and dispose of the community estate of himself and his said insane wife to the best interest of said estate as the law directs, all of which was properly recorded in the probate minutes of Shelby county, Tex., and all of which is made manifest by the probate minutes of Shelby county, Tex.

"It is admitted that the said application of said D. G. Green to be appointed as such com-

munity administrator was in all things regular, showing that his wife had been declared insane by a court of competent jurisdiction, and giving the names, sex, and residence of each of their children, the existence of such community estate between them, and facts showing that the probate court of Shelby county, Tex., had jurisdiction over said estate, subject to the fact the land was a homestead and there were no community debts.

"It is admitted that the aforesaid inventory showed the land in controversy to be the community property of D. G. Green and Jennie Green, and that there were no community debts of said D. G. and Jennie Green, at the time that she was adjudged insane, nor at the time the said D. G. Green was appointed such community administrator, nor at the time he sold the land involved in this suit, and that the land at such time was a homestead.

"(34) It is further admitted that the land in controversy was and is situated in Shelby county, Tex., and was the homestead of D. G. and Jennie Green, at the times she was adjudged insane, as hereinbefore stated, and was claimed by D. G. Green to be his homestead at the time he executed the deed to J. H. and W. C. Windham, and in fact he had no other homestead at the time, and there were no community debts.

"It is admitted that the land in controversy was in fact the community property by D. G. Green and his wife, Jennie Green.

"(35) It is further admitted that the conveyance from D. G. Green to J. H. and W. C. Windham, dated May 23, 1919, and recorded in vol. 97, page 337, Deed Records. of Shelby County, Tex., as introduced by the defendants in this case, conveying the land in controversy to said J. H. and W. C. Windham; that said J. H. and W. C. Windham acquired by said conveyance an absolute title to the land in controversy, unless the fact that no debts existed would deprive the said D. G. Green of the authority to sell and convey a perfect and good title to the land in controversy, and the land was the homestead.

"(36) It is further agreed and admitted that all the instruments offered by the defendants herein are in regular form and properly authenticated, including the lunacy proceeding, the administrator proceeding, and the title papers, including the patent, and deeds were all in legal form, with the qualifications that the property in controversy was when it was deeded by D. G. Green to J. H. and W. C. Windham, the homestead of himself and his wife, as the said D. G. Green was in possession of same, and his said wife, Jennie Green, was in the insane asylum at Terrell, Tex., the possession of which had never been surrendered to the date of said conveyance, and that no debts, at any time while said proceedings were in progress, existed against said community estate."

It will be seen that by paragraph 35 of the above-agreed statement of the parties the only question for us to determine is whether the deed from D. G. Green, acting in his individual capacity for himself, and as administrator of the community estate of himself and his insane wife, Jennie Green, passed title to the property conveyed, the same being the community homestead of said D. G. Green and his said wife, and there being no community debts.

Appellants present three assignments of error, as follows:

"(1) The court erred in rendering judgment against the plaintiffs, D. G. Green and his wife, Jennie Green, acting through her next friend, J. T. Green, and in favor of the defendants, denying the plaintiffs the relief sought.

"(2) The court erred in rendering judgment against the plaintiffs, D. G. Green and Jennie Green, acting through her next friend, J. T. Green, denying to them the relief sought, because all of the testimony introduced by the parties affirmatively showed the plaintiffs were entitled to the relief sought.

"(3) The court erred in rendering judgment decreeing to the defendants, upon their cross-action, the title and possession of the land in controversy."

[1] Appellees object to the consideration of the assignments of error, because none of said assignments "distinctly specify the grounds of error relied on," as is required by Rules 24 and 25 (142 S. W. XII) for the Courts of Civil Appeals. Ordinarily, we would be inclined to sustain said objection, but, as is said by counsel for appellants, in his reply to said objection, the assignments are sufficient to call the court's attention to the state of the record, and in the absence of any conflict in the testimony, if error was committed, it is an error of law, and therefore should be considered by this court.

[2] It is a long and well-established rule that community survivors, without qualifying as community administrators, can sell community property for the purpose of paying community debts; the community homestead not being an exception. Wiener et al. v. Zweib, 105 Tex. 276, 141 S. W. 771, 147 S. W. 867; article 3594, V. S. C. S.; Dawson v. Holt, 44 Tex. 178; Pierce v. Gibson, 108 Tex. 66, 184 S. W. 502, 1 A. L. R. 1675; Stone v. Jackson, 109 Tex. 385, 210 S. W. 953. The question here then is, when the survivor qualifies as community administrator and the property sold is the community homestead, and there are no community debts, does such administrator's deed convey a legal title?

Article 3594, V. S. C. S. provides:

"Where the wife dies or becomes. insane, leaving a surviving husband and child, or children, the husband shall have the exclusive management, control and disposition of the community property in the same manner as during her lifetime, or sanity; and it shall not be necessary that the insane wife shall join in conveyance of such property, or her privy examination and acknowledgment be taken to such conveyances, subject, however, to the provisions of this chapter."

Articles 3595 to 3599 provide for the administration of the community estate. Article 3600 provides:

"When the order mentioned in the preceding article has been entered, such survivor, without any further action in the county court, shall have the right to control, manage and dispose of such community property, real or personal, in such manner as may seem best for the interest of the estate and of suing and being sued with regard to the same, in the same manner as during the lifetime of the deceased; and a certified copy of the order of the court mentioned in the preceding article shall be evidence of the qualification and right of such survivor."

It always being the law that the survivor could sell community property to pay community debts, without administering upon the community estate, then what was the purpose of the Legislature in enacting the law authorizing the survivor to qualify as community administrator, and empowering him to "control, manage and dispose" of such community estate, real and personal, in such manner as may seem best for the interest of the estate? The Legislature must have intended to grant some right—to confer some power that had not theretofore existed by the enactment of the above statute. What additional right or power did it give to those already had? We take it that it was intended by the Legislature to thus afford an easy, speedy, and ample mode of controlling and managing community estates, and to allow the survivor to manage, sell, and dispose of same, relieved of the trammels thrown around such estates prior to that time, and that this law should receive a liberal interpretation. If consent of the wife, who has become hopelessly insane, must be had before the husband can finally dispose of the community homestead, when he thinks under the circumstances it is for the best to do so, then the law would require an impossibility, and the property would be hopelessly tied up in his hands. The object of the amendment to article 3594 was to regard insane spouses as civilliter mortuus, and hence recognized the impossibility of obtaining her consent, and in that case the unfortunate is to be treated in law as dead. In ascertaining the meaning of the law authorizing administration of community estates by the survivor, the statute itself is the best guide. It is free from ambiguity, and plainly provides that—

"When the order mentioned in the preceding article [article 3599] has been entered, such survivor, without any further action in the county court, shall have the right to control, manage and dispose of such community property, real or personal, in such manner as may seem best for the interest of the estate," etc.

It makes no exception, mentions no conditions of control, management, or disposition of said property, other than as may seem (to the community administrator) best for the interest of the estate. He is granted full power, is given all discretion, and the existence of community debts is nowhere made a condition of the power to sell. To make payment of community debts a condition precedent of the power of the community administrator to sell property, real or personal, homestead or otherwise, would be to read into the statute a provision and limitation not expressed, and in view of the history of the legislation, not intended by the Legislature, the effect of which would be, in many instances, to nullify the law and destroy its very purpose.

The qualification of the surviving husband or wife as administrator of the community estate does not confer upon such survivor any greater power in reference to his or her interest in the community property than he or she had before such qualification, and the only additional power acquired by qualifying as such administrator is the power to sell the interest before held by the deceased or insane member. That such survivor, who has qualified as administrator of the community estate, has the right to sell, not only his or her interest in the common property, but also the entire community, we think, is well established, even though such property be a homestead, and there are no community debts. The survivor, under the law, may sell community property for the purpose of paying debts against the estate, without qualifying as administrator, but cannot go on after the debts are paid, and dispose of the whole estate, but when the survivor avails himself of the rights and powers of the law granting administration of community estates, and legally qualifies as such administrator, then he has the plainly expressed right and power to "control, manage and dispose of such estate, real and personal," without exceptions or conditions, his bond protecting persons interested in the estate. By the act of qualifying as administrator, he becomes, in so far as control, management, and sale of same is concerned, the sole owner of the whole of the estate, and no one, not even the heirs of the deceased or insane spouse, can affect the acts of ownership over the property.

So, we conclude that the provisions of the act were intended to and did empower the administrator of the community estate to control, manage, and dispose of the community property, real or personal, homestead or otherwise, without exception and without condition, other than is expressed in the statute itself, which is within the discretion of the qualifying survivor, for the best interest of the estate, and so, in the instant case, we hold that the fact there were no community debts is of no weight, and that the deed of D. G. Green, executed as aforesaid, passed legal title to appellees to the land in question. Johnson v. Taylor, 43 Tex. 121; Dawson v. Holt, 44 Tex. 175; Cordier v. Cage, 44 Tex. 533; Grothaus v. De Lopez, 57 Tex. 670; Leatherwood v.

Arnold, 66 Tex. 414, 1 S. W. 173; Shields v. Aultman, Miller & Co., 20 Tex. Civ. App. 345, 50 S. W. 219; Pate v. State, 54 Tex. Cr. R. 491, 113 S. W. 757; Gilley v. Troop, 146 S. W. 954; Morse v. Nibbs, 150 S. W. 766.

Finding no error in the record, the judgment is affirmed.

---

⚖=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes